**Garfield VINCENT, Petitioner–Appellant,**

v.

**Floyd BENNETT, Superintendent, Elmira Correctional Facility, Respondent–Appellee.**

**Docket No. 01–2730.**

United States Court of Appeals, Second Circuit.

Jan. 7, 2003.

Adria De Landri, (Daniel J. Ollen, New York, NY, on the brief), for Petitioner–Appellant Garfield Vincent.

Jane S. Meyers, Assistant District Attorney Kings County, Brooklyn, NY, (Leonard Joblove, Assistant District Attorney, Sholom J. Twersky, Assistant District Attorney, on the brief) for Respondent–Appellee Floyd Bennett.

Present FEINBERG, JACOBS, and SACK, Circuit Judges.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Garfield Vincent appeals from a judgment of the United States District Court for the Eastern District of New York (Weinstein, *J.*), denying his petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Vincent was convicted by a jury in the New York State Supreme Court, Kings County, of criminal possession of a controlled substance in violation of the New York Penal Law. He was sentenced to an indeterminate prison term of 15 years to life. The Appellate Division, Second Department, affirmed the conviction on direct appeal. *People v. Vincent,* 250 A.D.2d 787, 672 N.Y.S.2d 781 (2d Dep't 1998). The Court of Appeals denied leave to appeal. *People v. Vincent,* 92 N.Y.2d 931, 680 N.Y.S.2d 472, 703 N.E.2d 284 (N.Y.1998) (Kaye, *C.J.*). Vincent's *pro se* application for a writ of *coram nobis* was denied without opinion. *People v. Vincent,* 260 A.D.2d 413, 686 N.Y.S.2d 318 (2d Dep't 1999). The Court of Appeals denied leave to appeal, also without opinion. *People v. Vincent,* 93 N.Y.2d 1029, 697 N.Y.S.2d 588, 719 N.E.2d 949 (N.Y.1999) (Bellacosa, *J.*).

We review *de novo* the denial of *habeas corpus* petitions. *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 808 (2d Cir. 2000).

[i] Vincent argues that his Sixth Amendment right to a public trial was violated when, during the testimony of an undercover police officer, the trial court closed the courtroom to all members of the public except Vincent's mother.

Preliminarily, we conclude that the Second Department's denial of Vincent's Sixth Amendment claim did not constitute an "adjudication on the merits" entitled to deference under the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254(d)(1). Although Vincent presented this claim on direct appeal, the Second Department's only comment arguably bearing on it is the catch-all phrase that the claims not discussed in the opinion were "either unpreserved for appellate review or without merit." *People v. Vincent,* 672 N.Y.S.2d at 781. We have held that this formula amounts to a ruling on the merits where the prevailing party did not argue that the claim at issue was unpreserved. *See Ryan v. Miller,* 303 F.3d 231, 246 (2d Cir.2002). Here, however, the respondent argued that the Sixth Amendment claim was unpreserved, and we therefore cannot presume that the Second Department considered the merits.

After careful consideration of the trial transcript, we conclude that Vincent knowingly and voluntarily consented to the partial closure of the trial, and therefore waived his Sixth Amendment right to a public trial. *See United States v. Canady,* 126 F.3d 352, 359 (2d Cir.1997). The state trial court conducted two pre-trial hearings (March 11 and 12, 1997), and the trial commenced the next day. At the *Wade* hearing on March 11, the prosecution moved to close the courtroom because the surveillance audio and videotapes would reveal the identity of the undercover officer. After initially objecting to the closure, Vincent agreed that he would waive his objection if his mother were permitted to remain. The court adopted that compromise, and the following exchange ensued:

> **The Court:** We are having a hearing. I am sealing the court room except that I would, at this time, permit the mother of the defendant to remain in the courtroom. This is with the consent of the defendant?

**[Defense counsel]:** That's correct. That would be a different story for the actual jury trial.

At the conclusion of the *Wade* hearing, the court ruled that the post-arrest identification of Vincent was "inherently suspect" and precluded the anticipated trial testimony of the undercover police officer. The government then moved for an independent source hearing to determine if the undercover officer's identification was independently reliable, and the court conducted that hearing the next day, March 12.

The court originally intended to hold a *Hinton* hearing (to determine whether the courtroom should be closed during the undercover officer's trial testimony) when the officer appeared in person at trial. However, since the court learned that the officer would be present on March 12, the court re-scheduled a *Hinton* hearing to immediately precede the independent source hearing.

On March 12, the court confirmed that it would hear both issues. After a brief exchange over the court's decision to close the courtroom until the closure issue was decided, the court explicitly announced:

**The Court:** After the hearing is held I will determine ... whether the mother should be permitted to attend *if in fact we have a trial, the trial of this defendant or any other hearing that we have with respect to this defendant,* all right.

(emphasis added) The court then conducted a *Hinton* hearing, with both parties questioning the undercover officer.

At the close of questioning, defense counsel proposed the same compromise that had governed the *Wade* hearing: that Vincent's mother be permitted to remain during the testimony of the undercover officer both during the anticipated independent source hearing and (if necessary) for his testimony at trial. The court specifically asked defense counsel whether he had any objection to this partial closure, to which defense counsel responded: "No. That's been my offer of compromise that I discussed with my client." The following exchange then ensued:

**The Court:** You discussed this with your client?

**[Defense counsel]:** I discussed with my client. He has some family members who, members who are women here. He said if his mother is here alone, he has no exception.

**The Court:** Mr. Vincent, you heard your attorney and you heard the statements that he made with respect to closure or partial closure of this courtroom and *allowing the mother in and excluding certain other members of the public from attending this trial.* Do you agree what your counselor said?

**The Defendant:** Yes.

(emphasis added) The court then admitted Vincent's mother to the courtroom for the independent source hearing. Trial commenced the next day, March 13, and except for Vincent's mother, all members of the public were excluded from observing the testimony of the undercover officer.

At a break in the proceedings, while the judge and the parties were waiting for delivery of a video-tape and the arrival of the undercover officer, defense counsel attempted to reopen the *Hinton* issue, an initiative premised in part on the presence of additional family members. Similarly, the prosecution moved the court to reconsider the mother's presence for the undercover officer's testimony. After listening to the parties' arguments, the judge expressly adhered to his previous ruling: "I would, if there were to be *another Hinton* hearing, adhere to my ruling that I issued at the time the hearing was held during the *Wade* hearing." (emphasis added).

We "draw all reasonable inferences against the loss of [a constitutional] right." *Canady*, 126 F.3d at 359. But on this record it is quite clear that [1] Vincent was aware that the court was considering his right to a public trial, and [2] the court ascertained that Vincent understood the nature of his waiver. At trial, both parties attempted to reopen the issue, but the judge expressly refused to revise his earlier ruling. Nothing in the subsequent discussion at trial indicates that the lawyers or the judge failed to recognize that the *Hinton* issue had already been decided on the basis of the defendant's knowing waiver, or that the adequate waiver given earlier was in any way defective or uncomprehending. We therefore conclude that Vincent waived his right to a public trial "with awareness of its consequences." *United States v. Morgan*, 51 F.3d 1105, 1110 (2d Cir.1995).

[ii] Evidentiary rulings by state courts are not ordinarily subject to *habeas* review unless they deprive a defendant of a fair trial. *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Vincent challenges the admission at trial of three pieces of testimony by the detective in charge of the investigation: [1] that in an attempt to locate Vincent, the detective "contacted [Vincent's] probation officer"; [2] that the detective checked Vincent's license number shortly after the "first buy" (for which Vincent had not been charged in the indictment); and [3] that the detective had gone to the location where the charged drug transaction took place in order to "purchase guns." Vincent argues that this testimony should have been excluded as improper bad act evidence. Vincent also challenges two comments made by the prosecutor in summation: [4] that "$2600 [the value of the charged sale] on a daily basis is a lot of money"; and [5] that the police had undertaken the undercover operation that netted Vincent because of neighborhood complaints of criminal activity. Vincent argues that these comments, considered in the context of the bad act evidence, tainted the fairness of the trial. We disagree.

First, no more than two of the detective's statements can fairly be characterized as impermissible bad act evidence; and neither compromised the fundamental fairness of the trial. The reference to contacting Vincent's probation officer was cured by the court's instructions, which the defense accepted as adequate. The court offered a curative instruction for the "first buy" reference as well, but defense counsel declined, seeking either an admonishment of the witness in the presence of the jury, or nothing at all.

The prosecution's closing statements were not seriously prejudicial. Only the second statement (regarding neighborhood complaints) even remotely implied prior criminal activity by Vincent. The court cured any prejudice by instructing the jury that evidence of other crimes in the neighborhood could not be used to determine Vincent's guilt.

For the reasons set forth above, the judgment of the district court is **AFFIRMED.**