F I L E D
United States Court of Appeals
Tenth Circuit

MAR 31 1997

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

JIM LUMAN,

　　　　Petitioner-Appellant,

v.

RON CHAMPION, in his official
capacity as Warden; and THE STATE
OF OKLAHOMA,

　　　　Respondents-Appellees.

No. 95-5275
(D.C. No. 93-C-297-B)
(N.D. Okla.)

ORDER AND JUDGMENT[*]

Before PORFILIO, ANDERSON, and BRISCOE, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore

ordered submitted without oral argument.

In his amended petition for writs of habeas corpus, petitioner Jim Luman

sought vacation of two convictions stemming from two separate cases in

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Oklahoma state court.  The district court granted relief on one of the convictions, attempted grand larceny after two or more felony convictions (case No. CF-90-1277), on the basis that petitioner did not knowingly and intelligently waive his right to counsel.  Respondents have not appealed that determination. The district court denied relief on the other conviction, knowingly concealing stolen property after two or more felony convictions (case No. CF-89-1006), and petitioner appeals pro se.  We have jurisdiction under 28 U.S.C. § 1291 and review the district court's factual findings for clear error and its legal conclusions de novo, Matthews v. Price, 83 F.3d 328, 331 (10th Cir.1996).[1]  We affirm.

The general facts leading to petitioner's conviction in case No. CF-89-1006 are not in dispute.  On December 5, 1988, ninety-five boxes of meat were stolen from the Monfort Food Distributing Company in Tulsa.  The next day, petitioner rented a refrigerated trailer in Tulsa.  Later in December, petitioner traded boxes of meat, which turned out to be some of the meat stolen from Monfort, to Hugh Caraway and Wendell West in return for various items.  West had picked up some of the boxes of meat from the refrigerated trailer petitioner had rented.

---

[1]    Respondents request that we apply the revised version of 28 U.S.C. § 2254(d) enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214.  AEDPA was signed into law on April 24, 1996.  Petitioner filed his petition on April 6, 1993, and his notice of appeal on December 18, 1995.  We have previously ruled that under these circumstances, the revised version of § 2254(d) does not apply.  See Edens v. Hannigan, 87 F.3d 1109, 1112 n.1 (10th Cir. 1996).

Investigation of the stolen meat focused on petitioner after the butcher to whom Caraway took his boxes of meat became suspicious that it was stolen and contacted Monfort. There was no direct evidence that petitioner knew the meat was stolen, nor was there any evidence indicating who stole the meat from Monfort.

In March 1989, petitioner was charged with knowingly concealing stolen property (the three boxes of meat he had traded to Caraway) after two or more felony convictions. A jury found him guilty, and he was sentenced to thirty years' imprisonment. The conviction was affirmed on direct appeal in an unpublished decision. In post-conviction proceedings, which included an evidentiary hearing on petitioner's claim of ineffective assistance of trial counsel, state courts denied relief. Petitioner then brought this action seeking habeas relief. On appeal, he contends that (1) he received ineffective assistance of counsel because his counsel failed to adequately investigate his case and prepare for trial and because counsel failed to object to testimony by his probation officer; (2) the trial court improperly communicated ex parte with a juror; and (3) he was denied his right to cross-examine a witness.[2]

---

[2]    On appeal, petitioner claims that his counsel was also ineffective during preliminary proceedings. However, petitioner did not raise this argument in the district court, and we will not consider it on appeal. We reject his contention that his brief passing mention of his counsel's actions during preliminary proceedings

(continued...)

To prevail on a claim of ineffective assistance of counsel, petitioner must prove both that his counsel's performance was deficient, that is, fell below an objective standard of reasonableness, and that this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). "Reasonableness is evaluated under prevailing professional norms and is considered in light of all the circumstances." Edens, 87 F.3d at 1114. Based on evidence that counsel failed to meet with any witnesses or petitioner's investigator before trial, the district court found that counsel completely abdicated his duty to investigate and that his performance was thus deficient in this regard. However, the court concluded that petitioner had not shown that he was prejudiced by the failure to investigate.

We agree with the district court that petitioner has not demonstrated that he was prejudiced by his counsel's failure to investigate. When an ineffective assistance claim centers on a failure to investigate and elicit testimony from witnesses, the petitioner must "demonstrate, with some precision, the content of the testimony they would have given at trial." Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990) (quotation omitted). Though many of the defense

---

[2](...continued)
in his amended petition's statement of facts--without any argument that these actions were ineffective--is sufficient to preserve the issue for review. See Rademacher v. Colorado Ass'n of Soil Conservation Dists. Medical Benefits Plan, 11 F.3d 1567, 1571-72 (10th Cir. 1993).

witnesses who testified at petitioner's trial also testified at the post-conviction evidentiary hearing or submitted affidavits indicating that counsel did not interview them prior to trial, petitioner does not identify what testimony they could have given had counsel's performance not been deficient. Instead, petitioner contends only that "important potential testimony would have been discovered" had his counsel interviewed witnesses before trial, Appellant's Br. at 11, and that "it is impossible to second guess just what [witness Michaelberg] could have testified to had [counsel] fulfilled his duty to make reasonable investigations," id. at 10.

By failing to show what testimony the witnesses could have given, petitioner cannot show that there is a reasonable probability that but for counsel's deficient performance, the result of the trial would have been different. See Strickland, 466 U.S. at 694. Moreover, we reject petitioner's attempt to avoid his burden of showing prejudice by contending "counsel entirely fail[ed] to subject the prosecution's case to meaningful adversary testing." United States v. Cronic, 466 U.S. 648, 659 (1984). Though counsel's performance in failing to investigate was deficient, it was not so deficient that prejudice can be presumed. See Houchin v. Zavaras, No. 96-1187, 1997 WL 81157, at *6 (10th Cir. Feb. 27, 1997).

Petitioner also claims his counsel was ineffective for failing to assert the proper objection to testimony by his federal probation officer, Rod Baker.

Petitioner was on probation at the time he traded meat to West and Caraway. Though Baker was not allowed to state that he was a probation officer, he was allowed to testify that petitioner was obligated to report to him specific details of his business activities including income, and that he had reported trading activities in the past. Baker then testified that during the relevant period, petitioner did not report any trades of meat. The prosecutor argued in closing that the failure to report the meat trades when he was obligated to do so was evidence petitioner knew the meat was stolen. Petitioner contends that his counsel was ineffective for failing to object to this testimony on the basis that it was an improper comment on his Fifth Amendment right to remain silent. He also contends counsel was ineffective for failing to cross-examine Baker.

In certain circumstances, counsel's failure to assert a proper objection may constitute deficient performance. See United States v. Kissick, 69 F.3d 1048, 1056 (10th Cir. 1995) (finding counsel's performance deficient for failure to raise "dead-bang winner" objection in sentencing hearing); Mason v. Scully, 16 F.3d 38, 44 (2d Cir. 1994); Chatom v. White, 858 F.2d 1479, 1485-86 (11th Cir. 1988). The initial question here is whether petitioner's Fifth Amendment objection would have been proper, that is, would it likely have been successful and sustained. Cf. Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995) (failure of appellate counsel to raise meritless issue not deficient performance); United

States v. Dixon, 1 F.3d 1080, 1083 n.5 (10th Cir. 1993) (same; also noting that counsel's performance not necessarily deficient "whenever he fails to raise a claim which is ultimately determined to have had merit").

Petitioner essentially contends that he had a Fifth Amendment right not to incriminate himself by telling Baker he was trading stolen property. See Minnesota v. Murphy, 465 U.S. 420, 426-28 (1984). Therefore, he continues, Baker's testimony was an unconstitutional comment on his prearrest silence. The prosecution did not use Baker's testimony to impeach petitioner, as petitioner did not testify. See Jenkins v. Anderson, 447 U.S. 231, 238 (1980) (prearrest, pre-Miranda silence may be used to impeach defendant's testimony). Instead, the prosecution used petitioner's silence as evidence of guilt. The Supreme Court has not yet ruled on whether pre-Miranda or prearrest silence as substantive evidence is protected by the Fifth Amendment, see id. at 236 n.2 (reserving issue), and the circuits are split on this issue, see United States v. Thompson, 82 F.3d 849, 855 (9th Cir. 1996) (collecting cases).

We must assess counsel's performance by what he reasonably should have known, including the state of the law, at the time of trial. See Coleman v. Saffle, 869 F.2d 1377, 1394 n.15 (10th Cir. 1989); Elledge v. Dugger, 823 F.2d 1439, 1442-43, modified on reh'g, 833 F.2d 250 (11th Cir. 1987). Petitioner was tried in May 1990. At that time, it was not clear whether Oklahoma courts would allow

admission of evidence of prearrest silence. Compare Farley v. State, 717 P.2d 111, 112-13 (Okla. Crim. App. 1986), with Royal v. State, 761 P.2d 497, 500-01 (Okla. Crim. App. 1988). In this circuit, evidence of pre-Miranda silence was admissible as evidence of guilt. See United States v. Harrold, 796 F.2d 1275, 1278-79 (10th Cir. 1986) (approving admission of defendant's pre-Miranda invocation of right to remain silent in meeting with IRS officers); but see United States v. Sasser, 974 F.2d 1544, 1558-59 (10th Cir. 1992) (finding evidence of prearrest failure to comply with subpoena, compliance with which may have compelled defendant to incriminate himself, inadmissible under the Fifth Amendment); United States v. Burson, 952 F.2d 1196, 1200-01 (10th Cir. 1991) (finding prearrest silence inadmissible as evidence of guilt). Because the success of a Fifth Amendment objection in this case is questionable, we cannot say that petitioner's counsel's failure to assert the objection amounted to deficient performance. See Lilly v. Gilmore, 988 F.2d 783, 786 (7th Cir. 1993) (performance not deficient where counsel fails to forecast changes or advances in the law).

We also agree with the district court that counsel's failure to cross-examine Baker was not deficient performance. Petitioner contends that counsel could have elicited testimony that his trades did not generate income and that he therefore had no obligation to report the trades to Baker. Petitioner is speculating what

cross-examination could have revealed, and we do not agree that trades necessarily do not generate income. Moreover, cross-examination could have emphasized Baker's testimony. We do not find counsel's failure to cross-examine objectively unreasonable.

Petitioner next contends that the trial court erred by communicating ex parte with a juror regarding the juror's possible prejudice or bias. After the prosecution had completed presentation of its case on the first day of trial, a juror sent word to the judge that she had seen news accounts regarding petitioner's involvement in a different trial then proceeding in federal court in Tulsa.[3] The judge met the juror in chambers, with a court reporter but without counsel or petitioner in attendance, to find out what she had heard or seen. She said she had seen what appeared to be a sketch of petitioner on the television news the previous evening, but did not hear what was being said about him and paid no more attention. Then during a break in proceedings that morning, she was reading a newspaper article about the Abello-Silva trial and read that petitioner was going to be a witness in that trial. At that point she stopped reading the article and reported the incident to the bailiff. She told the judge that she did not

---

[3]     Petitioner was scheduled to be a witness in the drug trafficking trial of Jose Abello-Silva. We noted in Abello-Silva's appeal from his convictions that there had been pretrial publicity in that case. See United States v. Abello-Silva, 948 F.2d 1168, 1177-78 (10th Cir. 1991).

read any "details" about petitioner's being a witness.[4]  She also stated that during a supplemental voir dire that morning, when petitioner's counsel asked whether any jurors had seen or heard anything in the media about petitioner, it did not register that she had seen the sketch of petitioner the previous evening.  The juror said she had not mentioned this incident to the other jurors and told the judge that she thought she could continue as a juror and decide the case on the facts.

The judge then met with the counsel and "discussed with both attorneys the nature of the discussion that I've had with the juror," Trial Tr., Vol. II at 136, though this discussion was apparently not recorded and transcribed.  The judge said that he thought the juror could continue to sit and allowed petitioner's counsel to question the juror.  Counsel declined, and the case proceeded.

Petitioner contends that the judge's ex parte communication with the juror violated his Sixth Amendment right to an "open and public trial" and apparently his right to be present during all proceedings.  He also contends that this type of error is not subject to harmless error analysis, or if it is, that respondents have not met their burden of showing harmlessness beyond a reasonable doubt as required by Chapman v. California, 386 U.S. 18 (1967).

---

[4]    According to petitioner, the newspaper article she read indicated that he was a felon who had spent time in jail with an Abello-Silva coconspirator. Petitioner contends that the juror may also have read an article in the previous day's paper providing more details of his criminal history, but there is no evidence that she read that article.

Contrary to petitioner's contention, any error that may have occurred here is a trial error that is subject to harmless error analysis. See Rushen v. Spain, 464 U.S. 114, 117-20 (1983); Yarborough v. Keane, 101 F.3d 894, 896-98 (2d Cir. 1996), petition for cert. filed, (U.S. March 10, 1997) (No. 96-8189); Hegler v. Borg, 50 F.3d 1472, 1476-77 (9th Cir.), cert. denied, 116 S. Ct. 675 (1995). Moreover, because this issue arises on habeas, we apply not Chapman's test for harmlessness, but instead the harmlessness test of Brecht v. Abrahamson, 507 U.S. 619 (1993). See Yarborough, 101 F.3d at 899; Hegler, 50 F.3d at 1477-78. Under Brecht, a habeas petitioner challenging a trial error is entitled to relief only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 623 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

On review of the record, we agree with the district court that the judge's ex parte communication with the juror was harmless. The juror stated that she learned that petitioner was a witness in the other trial, but not any facts about petitioner's criminal past. Immediately after talking with the juror, the judge informed counsel of the discussion and allowed petitioner's counsel to question her, an opportunity he declined. In an affidavit submitted after trial, petitioner's counsel stated that the trial judge only informed him that the juror had seen the newspaper article, not that she had also seen his picture on the television news,

and that had he known this latter fact, he would have cross-examined her. Additionally, petitioner appears to contend that his counsel was ineffective for failing to examine her in any event. Though it may have been better practice for the judge to have allowed counsel to read a transcript of his meeting with the juror and to have recorded his discussion with counsel about that meeting, it is clear he informed counsel of the substance of his meeting. Moreover, it was objectively reasonable for counsel not to have cross-examined the juror, an action that could well have been counterproductive. See United States v. Santiago, 977 F.2d 517, 522-23 (10th Cir. 1992).

Finally, petitioner contends that the trial court violated his right to call and/or confront witnesses when it refused to allow a witness to testify because of a violation of the rule of sequestration. The witness, Wendell West, had testified for the prosecution and had been cross-examined by petitioner's counsel. At the close of the prosecution's case, the prosecutor invoked the rule. After trial recessed for the day, petitioner telephoned West and asked him to check his records on several points covered by his testimony. He also told West that Alan Elias would be called as a witness the next day and told him what Elias's testimony would be. When counsel called West as a witness the next day, the prosecutor objected on the basis that the rule had been violated. After West was

questioned about his conversation with petitioner, the court determined that the rule had been violated and barred West from testifying.

We agree with the district court that even if the trial court committed some type of constitutional error--and we by no means intend to imply that it did--any error was patently harmless. West testified that he first discussed a meat trade with petitioner around December 16 to 19, 1988, and on cross-examination said it could have been on December 21 or 22. His "clarified" testimony would have been that this discussion occurred around December 21 to 23. Petitioner fails to explain, nor do we see, any significance to this clarification. West also testified that petitioner contacted him in May or June 1989 to tell him that the meat may have been stolen. The "clarified" testimony would have been that he "was possibly contacted by [petitioner] within the first two weeks of March, 1989." Exhibits in Support of Petitioner's Br., Ex. P at 3 (emphasis added).[5] The information charging petitioner with the offense was filed in early March 1989. Thus, at most the inference from this "clarified" testimony could have been that petitioner possibly warned West about the meat being stolen a few days prior to his being charged. Had this testimony been allowed, the prosecutor certainly

---

[5]     We note that in his brief, petitioner stated that this contact occurred in "the latter part of March," Appellant's Br. at 33, and that in his offer of proof at trial, counsel stated that this contact occurred in April or early May, 1989, Trial Tr. Vol. II at 179.

would have brought out on cross-examination that West did not recall this testimony until after petitioner contacted him. In light of his earlier testimony in which he twice stated that the event occurred in May or June, the "clarified" testimony would not have had much probative force, and we cannot say that its exclusion had a "substantial and injurious effect" on the outcome of the trial. See Brecht, 507 U.S. at 623.

The judgment of the district court is AFFIRMED. Petitioner's motion for appointment of counsel is DENIED. The mandate shall issue forthwith.


Entered for the Court


John C. Porfilio
Circuit Judge