**UNITED STATES of America**

v.

**Pablo VILELLA, Defendant.**

**No. S8 97 CR 786(SAS).**

United States District Court, S.D. New York.

April 29, 1999.

M. Katherine Baird, Robin L. Baker, Mary Mulligan, Assistant United States Attorneys, New York City, for Government.

Richard W. Brewster, New York City, for Defendant.

## OPINION & ORDER

SCHEINDLIN, District Judge.

### Background

Defendant Pablo Vilella ("Pablo" or "Vilella") was charged with one RICO conspiracy count in violation of 18 U.S.C. § 1962(d) (Count 2) and one narcotics conspiracy count in violation of 21 U.S.C.

§ 846 (Count 31). In the RICO conspiracy count, Vilella was charged, *inter alia*, with the following predicate acts: (1) conspiracy to rob and armed robbery of Jose Ramon Balbi; (2) conspiracy to murder and murder of Jose Ramon Balbi; and (3) conspiracy to distribute and distribution of crack cocaine. The jury found Vilella guilty of both the robbery and crack conspiracies but acquitted on the murder conspiracy. Defendant now moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 or, in the alternative, for a new trial pursuant to Rule 33. For the following reasons, both motions are denied.

At trial, the Government introduced evidence of the Balbi robbery through cooperating witness Rolando Lorenzo. Lorenzo testified that he had two distinct conversations that implicated Vilella in the robbery. The first conversation occurred prior to the murder and involved Lorenzo and Miguel Guzman. Lorenzo testified that Guzman told him that both Vilella and Kenneth Johnson were to be involved in a robbery/murder. Specifically, Guzman told Lorenzo that a "friend of someone Pablo knew" was going to come with a kilo of cocaine and they (Guzman, Johnson and Vilella) were going to rob and kill him. Trial Transcript ("Tr.") at 4027. The second conversation involved Vilella directly. According to Lorenzo, Vilella told him that he was sitting in the victim's car when Johnson pulled the trigger and that he jumped. Tr. at 4029. Specifically, "Pablo described it, like, oh, shit, when he shot him in the head, shit, I jumped. I said, goddam, this guy is bugging... I remember him jumping and say, when [Johnson] shot the victim behind the head, how he jumped because they [Johnson and Vilella] were the two ones inside the car." *Id.*

With regard to Vilella's participation in a crack conspiracy, five different witnesses testified. Elizabeth Perez testified that Vilella cooked cocaine into crack at her apartment. Tr. at 6250–51. Rafael Le-bron testified that he saw Vilella and Guzman "bagging up" crack at an apartment on Trinity Avenue by "[p]utting the crack bottles in tape, sealing them, so nobody could open them." Tr. at 4859. According to Lebron, "a lot of bottles" were involved. *Id.* Lorenzo testified that Guzman gave Pablo cooked crack and then complained about him "coming short with the money." Tr. at 3902. Lorenzo further testified that Guzman told Lorenzo that Pablo complained about drug competition in the vicinity of the Moore Houses. Tr. at 3914–18. Specifically, Guzman said that "Pablo think [sic] that he is running shit over in this spot because there is a young man that live [sic] in the Moore Houses that want [sic] to sell crack there, and Pablo didn't like the idea. Pablo asked Miguel, How can you put this guy to crack where I got my crack at?" Tr. at 3914. Luis Soto testified that Pablo carried a bookbag containing both crack and heroin back to Union Avenue at Guzman's direction. Tr. at 1320–23. Finally, David Rivera testified that he accompanied Pablo in taking crack back to his (Pablo's) apartment where he put it in a shoebox over the refrigerator. Tr. at 2541–44.

An unfortunate incident occurred near the end of the seven-week trial in which seven defendants were jointly tried. During counsel's summation on Vilella's behalf, Kenneth Johnson, a co-defendant, stood up and said: "The truth has got to come out. I want that read to the jury." Tr. at 8653–55. He then abruptly left the courtroom. Shortly following this incident, after the jury was excused and most counsel had left the room, the Court had a brief discussion with Kenneth Johnson and his counsel regarding a proposed curative instruction to the jury. Neither Vilella nor his attorney, Richard Brewster, were present during this colloquy. Before summations resumed, the jury received the following instruction regarding Johnson's conduct: "Mr. Johnson left during the summation. He didn't feel well. He apologizes, but he had to jump and go. Don't

consider that other than he just didn't feel well." Tr. at 8692. Later, during the afternoon session, Mr. Brewster moved for a mistrial. That motion was denied. Mr. Brewster did not make a request for a further curative instruction at any time after this incident.

Another point of contention occurred at the beginning of the trial. During the prosecution's opening statement, the Government told the jury that Vilella was a friend of Balbi and that he lured Balbi to the scene of the robbery/murder. During the course of the trial, however, no evidence was offered that Vilella was in fact Balbi's friend or that he lured him to his death.[1] This statement, according to Vilella, substantially prejudiced his right to a fair trial.

*Discussion*

*Rule 29 Standard*

■ Rule 29 provides that a court may set aside a guilty verdict pronounced by a jury and enter a judgment of acquittal if the evidence is insufficient to sustain a conviction. *See* Fed.R.Crim.P. 29. When evaluating a Rule 29 motion, a court must determine whether "a rational jury could conclude beyond a reasonable doubt that a defendant is guilty of the crime charged." *United States v. Murgas*, 177 F.R.D. 97 (N.D.N.Y.1998) (citing *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir.1993)). "The conviction must stand if all the elements of the crime are established beyond a reasonable doubt." *Id.* (citing *United States v. Moore*, 54 F.3d 92, 100 (2d Cir.1995)). A court must review the evidence in the light most favorable to the prosecution, *United States v. Desimone*, 119 F.3d 217, 223 (2d Cir.1997), resolve all reasonable inferences in favor of the Government, *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir.1984), and resolve all issue of credibility in favor of

the jury's verdict, *United States v. Weiss*, 930 F.2d 185, 191 (2d Cir.1991).

■ A defendant seeking to overturn a conviction on the ground of legally insufficient evidence " 'bears a heavy burden.' " *United States v. Cusimano*, 123 F.3d 83, 88 (2d Cir.1997) (quoting *United States v. Miller*, 116 F.3d 641, 676 (2d Cir.1997)). The jury's verdict may be based entirely upon circumstantial evidence, *United States v. Libera*, 989 F.2d 596, 601 (2d Cir.1993), which, like other evidence, is to be viewed "not in isolation but in conjunction." *Strauss*, 999 F.2d at 696. And while a conviction cannot rest on mere speculation or conjecture, it may be based solely on reasonable inferences drawn from circumstantial evidence. *United States v. Pinckney*, 85 F.3d 4, 7 (2d Cir. 1996). Furthermore, the Government need not preclude "every reasonable hypothesis consistent with innocence" *United States v. Friedman*, 998 F.2d 53, 59 (2d Cir.1993) (quoting *United States v. Soto*, 716 F.2d 989, 993 (2d Cir.1983)), and it is "the task of the jury, not the court, to choose among competing inferences." *United States v. Martinez*, 54 F.3d 1040 (2d Cir.1995) (citing *United States v. Stanley*, 928 F.2d 575, 577 (2d Cir.1991)). In short, a reviewing court "must affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt." *United States v. Allah*, 130 F.3d 33, 45 (2d Cir. 1997).

*Rule 33 Standard*

■ A motion for a new trial pursuant to Rule 33 may be granted "if the interests of justice so require." Fed. R.Crim.P. 33. Whether to grant a motion for a new trial pursuant to Rule 33 rests in the broad discretion of the trial judge. *United States v. Rodriguez*, 738 F.2d 13, 17 (1st Cir.1984). The burden of proving

---

1. The only evidence that might allude to a friendship came from Elizabeth Rivera, Balbi's widow, who testified that approximately ten years earlier, Vilella was at her birthday party. Tr. at 5515, 5526–28. Ms. Rivera never saw Vilella and Balbi together and provided no evidence that they were friends or that they even knew each other.

the need for a new trial lies with the defendant. *United States v. Soblen,* 203 F.Supp. 542 (S.D.N.Y.1961), *aff'd,* 301 F.2d 236 (2d Cir.1962). Unlike a Rule 29 motion, in deciding whether to grant a Rule 33 motion, a judge may weigh the evidence and determine the credibility of witnesses. *United States v. Sanchez,* 969 F.2d 1409, 1413 (2d Cir.1992). The Court is not required to view the evidence in the light most favorable to the Government. *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir.1980). The Court's discretion is, however, somewhat limited in that it should only grant a new trial when it "concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict [such] that a serious miscarriage of justice may have occurred." *Id.* Such motions are not favored and should be granted only with great caution in exceptional circumstances. *United States v. Costello,* 255 F.2d 876, 879 (2d Cir.1958); *Soblen,* 203 F.Supp. at 564. It is only where an injustice has been done such that an innocent person may have been convicted that there is a need for a new trial. *Sanchez,* 969 F.2d at 1414.

## Sufficiency of the Evidence

Vilella argues that the evidence of his participation in the Balbi robbery is insufficient to sustain his RICO conviction because it consists solely of the incriminating testimony of cooperating witness Rolando Lorenzo. He further argues that he cannot be found guilty of the crack conspiracy because the evidence (testimony from four cooperating witnesses and Elizabeth Perez) is equally consistent with personal use and not distribution of crack cocaine.

 Regarding the Lorenzo testimony, "the jury is exclusively responsible for determining a witness' credibility," *Strauss,* 999 F.2d at 696, and a reviewing court must give deference to the jury's

resolution of credibility. *Desimone,* 119 F.3d at 223. Here, the jury apparently found Lorenzo to be a credible witness. It is not my place to usurp this decision and hold otherwise. With regard to the crack evidence, I reach a similar conclusion. Although there was no seizure of narcotics or direct testimony as to any drug transactions, the circumstantial evidence implicating Vilella in a crack distribution conspiracy is overwhelming. "So long as, from inferences reasonably drawn, the jury could have found beyond a reasonable doubt that the defendant engaged in the charged criminal conduct, a conviction based on circumstantial evidence must be sustained." *United States v. Sureff,* 15 F.3d 225, 228 (2d Cir.1994) (circumstantial evidence consisting, *inter alia,* of taped telephone conversations using coded language and surveillance disclosing suspicious activity consistent with cocaine dealing supported defendant's conviction of conspiracy to distribute cocaine when viewed as a whole). *See also Martinez,* 54 F.3d at 1043–44 (inference of cocaine distribution sufficiently supported where defendant was found with small quantity of drugs, a scale and cut and a gun). Accordingly, I decline to overturn Vilella's convictions based on the alleged insufficiency of the evidence under either the deferential standard of Rule 29 or the more liberal standard of Rule 33.

## Kenneth Johnson's Outburst

Vilella argues that Kenneth Johnson's outburst prejudiced him in that it sought to exculpate Johnson at Vilella's expense. The statement: "The truth has got to come out. I want that read to the jury" is arguably inculpatory from its very words as well as the timing of its utterance— during Vilella's closing argument. According to Vilella, his right to confront witnesses was violated as Johnson was not called to the stand to explain what he meant.[2] Vilella also argues that the ensu-

---

**2.** Following this incident, Vilella's counsel did not move for a severance or attempt to call

Kenneth Johnson as a witness. As I find that Vilella's right to a fair trial was not compro-

ing colloquy between the Court, Johnson and his attorney, held outside his presence as well as that of his counsel, violated his right to be present at trial and his right to counsel under the Sixth Amendment of the United States Constitution. Although these issues are better left for appellate review, I will address them to determine if a new trial is warranted in the interests of justice.

■ Unfortunately, courts have, on occasion, been confronted with disruptive outbursts from co-defendants during the course of multi-defendant trials. In both *United States v. Aviles,* 274 F.2d 179 (2d Cir.1960), and *Panico v. United States,* 291 F.Supp. 728 (S.D.N.Y.1968), *aff'd,* 412 F.2d 1151 (2d Cir.1969), a defendant burst into a tirade before the jury accusing his co-defendants. In each case, as here, the judge promptly instructed the jury to disregard the defendant's statement. *Aviles,* 274 F.2d at 193; *Panico,* 291 F.Supp. at 740. In *Panico,* the court denied defendants' motion to vacate the judgment noting that the trial court did everything in its power to minimize the effects of the defendant's disruptive conduct and that the steps taken[3] were sufficient to protect the rights of the other defendants, including the movants. *Panico,* 291 F.Supp. at 740. In *Aviles,* the Second Circuit upheld the denial of a motion for a mistrial, stating:

Manifestly it was not error to deny the mistrial motions. If such conduct by a co-defendant on trial were held to require a retrial it might never be possible to conclude a trial involving more than one defendant; it would provide an easy

device for defendants to provoke mistrials whenever they might choose to do so. Under all the circumstances the trial judge's instructions adequately dealt with the situation and his denial of the mistrial motions was proper.

*Aviles,* 274 F.2d at 193.

Here, as in *Aviles* and *Panico,* the jury was instructed that Johnson's abrupt departure from the courtroom was the result of his not feeling well and should not be considered as anything other than that. There is no reason to assume that these instructions were not heeded by the jury. *See United States v. Marshall,* 458 F.2d 446, 452 (2d Cir.1972). In fact, it cannot be said that the jury did not carefully consider the evidence, and only the evidence, against Vilella when it convicted him of the robbery conspiracy and acquitted him of the murder conspiracy. As Johnson himself was charged with the murder conspiracy, one would expect his allegedly accusatory comments to result in Vilella's conviction on the murder count. This did not happen. Apparently, Mr. Johnson's comments, if in fact heard, fell upon deaf ears. Although Vilella may press this issue on appeal, the Kenneth Johnson outburst does not support acquittal or, alternatively, a new trial.

■ The more serious issue is raised by Vilella's and his attorney's absence from the colloquy following the incident. The right to be present at trial extends to all stages of trial " 'to the extent that a fair and just hearing would be thwarted by [the defendant's] absence.' " *United States v. Canady,* 126 F.3d 352, 360 (2d Cir.1997) (quoting *Snyder v. Massachu-*

mised, I need not decide if Vilella waived any Confrontation Clause issue by failing to call Johnson to the stand. Simply put, Johnson was not a trial witness and no "statement" made by him was read back to the jury in response to its request for all of the evidence linking Vilella to the Balbi homicide. If there was a violation to Vilella's Confrontation Clause rights, that error was harmless. *See Henry v. Speckard,* 22 F.3d 1209, 1215 (2d Cir.1994) ("When a reviewing court concludes that the trial judge has improperly

curtailed cross-examination, in violation of the defendant's confrontation rights, it should not reverse automatically but should instead apply harmless-error analysis."). *See also Tinsley v. Kuhlmann,* 973 F.2d 163, 166 (2d Cir.1992).

3. The trial judge instructed the jury to ignore the outbursts each time they occurred. *Panico,* 291 F.Supp. at 740.

*setts,* 291 U.S. 97, 108, 54 S.Ct. 330, 78 L.Ed. 674 (1934)). There have been, however, abridgements of this right which have not resulted in reversal of convictions. For example, in *Yarborough v. Keane,* 101 F.3d 894 (2d Cir.1996), a hearing to disqualify a witness was held outside the defendant's presence. The Second Circuit conducted an in-depth examination of the structural versus trial error dichotomy established in *Arizona v. Fulminante,* 499 U.S. 279, 307–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), and concluded that the error was trial error and, hence, subject to harmless error analysis.[4] *Yarborough,* 101 F.3d at 896–98. The court noted that the defendant's absence from the hearing, which was extremely brief and not part of the trial proper, was of minimal importance. *Id.* at 898. The court then held that any error in conducting the hearing without the defendant present was harmless. *Id.* at 899. A similar conclusion was reached by the Tenth Circuit in *Luman v. Champion,* 108 F.3d 1388, 1997 WL 143594 (10th Cir.1997), where the judge had an ex parte communication with a juror concerning the juror's possible prejudice or bias outside the presence of both the defendant and his counsel. The court found any error in the communication to be harmless, stating:

> Though it may have been better practice for the judge to have allowed counsel to read a transcript of his meeting with the juror and to have recorded his discussion with counsel about that meeting, it is clear he informed counsel of the substance of his meeting. Moreover, it was objectively reasonable for counsel not to have cross-examined the juror, an action that could well have been counterproductive.

*Luman,* 108 F.3d 1388, 1997 WL 143594 at *5.

■ Here, Vilella was furnished with a transcript of what transpired at the Ken-

neth Johnson meeting the next day. Although Vilella's counsel now argues that the instruction given the jury could not possibly have remedied the harm caused by Johnson's outburst, he did not request a further curative instruction during the trial. It cannot be said, therefore, that his presence during the colloquy was crucial. The instruction given was appropriate under the circumstances and would not likely have changed if Vilella's counsel had been present. *See Canady,* 126 F.3d at 361 ("we recognize that the defendant's right to be present is not absolute, and that, where the defendant's presence would be 'useless,' no constitutional right is implicated"). In any event, I find that the absence of Vilella and his counsel from the Johnson colloquy does not call into question the fundamental fairness of the trial. *See id.* ("'[T]he exclusion of a defendant from a trial proceeding should be considered in light of the whole record.'") (quoting *United States v. Gagnon,* 470 U.S. 522, 526–27, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985)). Any resulting error is therefore harmless.

*The Government's Opening Statement*

The Government made the following statement in its opening statement: "You will learn that Pablo was actually a friend of Mr. Balbi, that it was Pablo who lured the victim on to Union Avenue." Tr. at 95. Vilella argues that this remark substantially prejudiced his right to a fair trial as the Government introduced no evidence that Vilella was friends with Balbi or that he lured him to his death.

The jury was carefully instructed that the attorneys' statements were not evidence.

> This case is not to be decided on the rhetoric of the attorneys. What the lawyers have said in their opening arguments, in their summations, in their objections, or in their questions is not evidence. What I say is not evidence.

---

4. The court aptly stated that "[t]o determine whether an error is properly categorized as structural, we must look not only at the right violated, but also at the particular nature, context, and significance of the violation." *Yarborough,* 101 F.3d at 897.

The statements and arguments made by the lawyers are intended to convince you what conclusions you should draw from the evidence or lack of evidence. Now, those arguments are important. You should weigh and evaluate them carefully. But you must not confuse them with the evidence. As to what the evidence was, it is your recollection that governs, not the statements of the lawyers.

Tr. at 9062–63. In addition, I gave the following additional admonishment in connection with the Government's rebuttal summation: "Last week you heard many hours of summations by the Government and counsel for each of the defendants. I want to remind you now that arguments of counsel are not evidence and cannot supply evidence. Evidence only comes from the witnesses and the exhibits received in evidence." Tr. at 9057.

 "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young,* 470 U.S. 1, 10, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). A constitutional error occurs only when "the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair." *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir.1986) (citations omitted). The Second Circuit has applied a three-part test in determining the existence of "substantial prejudice": "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir.1981) (per curiam). Generally, the Second Circuit will not reverse a criminal conviction simply because a prosecutor made an unsupported statement in argument. *United States v. Forlorma,* 94 F.3d 91, 95 (2d Cir.1996).

██ Here, the Government told the jury in its opening statement that Vilella, a friend of Balbi, lured him to his death. However, Vilella was acquitted of the murder conspiracy charges. This reinforces the conclusion that the "prosecutor's remarks did not undermine the jury's ability to view the evidence independently and fairly." *Young,* 470 U.S. at 19, n. 15, 105 S.Ct. 1038. Furthermore, this was a seven week trial. The length of time between the prosecutor's opening statement and jury deliberations makes it highly unlikely that the unsubstantiated comments profoundly influenced the jury. *See United States v. Williams–Davis,* 90 F.3d 490, 508 (D.C.Cir.1996). Finally, the comment was not made in bad faith on the part of the Government—often there is an unexpected divergence between what is intended to be proven and what is actually proven especially during a trial of this length. Considering all of these factors, along with the explicit jury charge as to what constitutes evidence, I conclude that the Government's opening comments did not cause Vilella to suffer substantial prejudice.

*Conclusion*

For the reasons stated above, Vilella's motion for a judgment of acquittal pursuant to Rule 29 and his motion for a new trial pursuant to Rule 33 are denied. Sentencing is scheduled for May 19, 1999 at 4:30 p.m.

SO ORDERED.