NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0079n.06

No. 18-5737

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | **FILED** |
| | ) | Feb 04, 2020 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CHARLES BURTON, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |

BEFORE:    ROGERS, WHITE, and READLER, Circuit Judges.

ROGERS, Circuit Judge.  Following a bench trial in 1999, Charles Burton was convicted of numerous federal drug and firearms offenses and sentenced to 562 months' imprisonment. After unsuccessfully seeking relief under § 2255, this court authorized Burton to pursue a successive § 2255 challenge to his Armed Career Criminal Act enhanced sentence in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015). The district court granted Burton's successive habeas petition and resentenced Burton to 360 months in prison. Before doing so, the district court rejected a challenge by Burton to his underlying conviction based on the district court's original failure to announce its guilty findings to the defendant in open court, assertedly in violation of Federal Rule of Criminal Procedure 43 and the Fifth and Sixth Amendments. On appeal, Burton again raises his Rule 43 argument and also challenges the procedural and substantive reasonableness of his revised sentence. Because the Rule 43 violation in this case does not amount

to plain error, there is no basis to overturn the district court's denial of relief under § 2255. Further, Burton's challenges to his revised sentence are without merit.

**I.**

From November 1995 through February 1996, Charles Burton conspired with David Crozier and others to rob pharmacies of controlled substances and then sell the drugs for profit. Burton used a gun during the course of the robberies and carried a gun while selling the drugs. After a bench trial, the district court found Burton guilty of the following offenses: conspiring to distribute controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C); armed pharmacy robbery in violation of 18 U.S.C. § 2118(a) and (c)(1); using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1); possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1); possessing with intent to distribute Schedule II, Schedule III, and Schedule IV controlled substances in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and (b)(1)(D); and using a firearm during and in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1). The district court did not initially announce the verdict in open court. Instead, it mailed the verdict to the parties in the form of General Findings. The court later stated the verdict in open court during Burton's sentencing hearing.

During the sentencing phase, Burton was found to be an armed career criminal under 18 U.S.C. § 924(e) based on his prior Kentucky convictions for kidnapping, first-degree burglary, second-degree escape, and first-degree robbery (twice). Under the Sentencing Guidelines, Burton's total offense level was 34 and his criminal history category was VI, yielding a range of 262 to 327 months' imprisonment for the drug-trafficking, robbery, and felon-in-possession offenses. In addition, Burton faced mandatory consecutive sentences of 60 months and 240 months respectively for the first and second § 924(c) offenses.

The district court sentenced Burton to a total of 562 months' imprisonment.  The sentence consisted of concurrent terms of 262 months for the drug-trafficking conspiracy, armed robbery offense, felon-in-possession offense, and Schedule II drug trafficking offense; 120 months for the Schedule III drug trafficking offense; and 72 months for the Schedule IV drug trafficking offense, followed by consecutive terms of 60 months and 240 months for the two § 924(c) offenses.  The district court also ordered that Burton's federal sentence run consecutively to his state sentence. The district court subsequently amended the judgment to award Burton credit for 650 days that he had spent in custody awaiting trial.  We affirmed Burton's conviction on direct appeal, but remanded with the instruction to reinstate Burton's original sentence without credit for time served.  *United States v. Crozier*, 259 F.3d 503, 520 (6th Cir. 2001).  Burton's petition for writ of certiorari was denied, *Crozier v. United States*, 534 U.S. 1149 (2002), at which point his conviction and sentence became final.

In 2003, Burton filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel.  The district court denied the motion. *See Burton v. United States*, Nos. 3:03-cv-124, 3:97-cr-154, 2007 WL 1541929, at *9 (E.D. Tenn. May 23, 2007).  Burton did not appeal that ruling.  In May 2016, Burton sought leave to file a second or successive § 2255 motion, arguing that he should be resentenced in light of *Johnson v. United States*, which invalidated the residual clause of the Armed Career Criminal Act ("ACCA"). 135 S. Ct. at 2563.  This court permitted Burton to file a second or successive § 2255 motion, finding that Burton had "made a prima facie showing that his second-degree escape conviction may have been counted as a predicate offense under the ACCA's now-invalidated residual clause." *In re Burton*, No. 16-5745, R. 13-2, at 3 (6th Cir. Jan 25, 2017) (unpublished order).

In April 2017, the district court issued an opinion concluding that Burton no longer qualified as an armed career criminal under *Johnson* and ruling that Burton's successive § 2255 petitioner would be granted.[1] *Burton v. United States*, Nos. 3:97-cr-154, 3:17-cv-25, 2017 WL 1364968, at \*5 (E.D. Tenn. Apr. 12, 2017). The court noted that it would wait to enter the judgment order granting the petition. *Id.* at \*6. The court then appointed counsel for Burton and directed the parties to submit briefs regarding the appropriate corrected sentence. *Id.* at \*5-6.

In May 2017, Burton filed a *pro se* "Motion for Relief from Order Pursuant to Federal Rule of Civil Procedure 60(b)(4)." In this motion, Burton argued that his original convictions were invalid because the trial court did not announce his guilt in open court, in violation of Federal Rule of Criminal Procedure 43 and the Fifth and Sixth Amendments to the Constitution.[2] Furthermore, Burton argued that his invalid convictions divested the district court of jurisdiction to resentence him. The district court construed Burton's motion for relief from judgment as a motion to amend his successive § 2255 petition and denied the amendment as futile. The court reasoned that it was only authorized to adjudicate Burton's successive habeas petition as it related to his *Johnson* claim and was therefore powerless to entertain Burton's Rule 43 challenge to his underlying conviction. Burton again raised the issue of the validity of his convictions in a "Supplemental Argument," which the district court construed as a renewed motion to amend and denied for the same reason as before.

At Burton's request, the district court conducted a full resentencing hearing. In his allocution during the hearing, Burton once again raised his Rule 43 and constitutional arguments. In response, the court reiterated its earlier finding that to rule on Burton's challenge to his

---

[1] By this time, Judge Leon Jordan had replaced Judge James Jarvis as the judge assigned to Burton's case.

[2] All references throughout this opinion to Burton's "Rule 43 argument" or "Rule 43 based motion" should be read to include Burton's related constitutional arguments.

underlying conviction would exceed the Sixth Circuit's grant of authority to consider Burton's successive habeas petition. The parties agreed during the hearing that Burton qualified as a career offender under the Sentencing Guidelines. The parties also agreed that Burton faced an advisory Guideline range of 262 to 327 months' imprisonment, plus a 300 month mandatory minimum for two § 924(c) counts, for a net effective range of 562 to 627 months' imprisonment.

The court went on to impose an aggregate sentence of 360 months' imprisonment, consisting of concurrent terms of 60 months for the drug trafficking, robbery, and felon-in-possession offenses, followed by consecutive terms of 60 months and 240 months for the two § 924(c) offenses. The court also ordered that its revised sentence run consecutively to Burton's Kentucky sentence, which he received when he violated his terms of parole. Burton's parole was revoked when he was arrested on the instant federal offenses. On July 12, 2018, the district court issued an amended judgment memorializing its revised sentence. The court also issued a judgment on the same day granting Burton's successive motion to vacate under § 2255 and directing the clerk's office to close the civil case. Burton filed a timely notice of appeal, in which he states that he is appealing the district court's amended criminal judgment. His notice of appeal does not mention or allude to the district court's judgment granting his § 2255 motion.

## II. Jurisdictional Issues

The notice of appeal in this case was sufficient for Burton to challenge the denial of his Rule 43 based motions. The Government points out that Burton appealed only the amended judgment, which imposed a revised sentence of 360 months, and chose not to appeal the district court's judgment granting in part his § 2255 petition. The Government argues that a court of appeals "lacks jurisdiction to review rulings which a party has not appealed." Furthermore, the Government asserts that habeas proceedings are civil in nature and therefore independent of the

underlying criminal case. Therefore, in the Government's view, for the court to have appellate jurisdiction over Burton's Rule 43 based motions, Burton needed to have appealed the judgment granting his successive motion to vacate and not the amended judgment modifying the sentence in his criminal case. This argument is without merit.

The federal habeas statute grants district courts the authority to "vacate, set aside or correct" a prisoner's unlawful sentence. 28 U.S.C. § 2255(a). Upon a finding that a prisoner's sentence is unlawful, a district court may impose one of four possible remedies: (1) "discharge the prisoner," (2) "grant [the prisoner] a new trial," (3) "resentence [the prisoner]," or "correct the [prisoner's] sentence." *Id.* § 2255(b). An appeal may be taken . . . as from a "*final judgment* on application for a writ of habeas corpus." *Id.* § 2255(d) (emphasis added).

Contrary to the Government's assertion, Burton has properly appealed the amended criminal judgment, which serves as the final judgment for claims under § 2255. This result is compelled by *Andrews v. United States*, in which the Supreme Court held that a district court's order vacating a prisoner's sentence and ordering resentencing under § 2255 is not considered final and appealable until after the resentencing has occurred. 373 U.S. 334, 339-40 (1963); *see also United States v. Lawrence*, 555 F.3d 254, 258 (6th Cir. 2009). In *Andrews*, two prisoners brought motions under Federal Rule of Criminal Procedure 35, arguing that the district court had wrongfully deprived them of their right to allocute during sentencing. 373 U.S. at 337. The district court granted the motions and ordered that the prisoners be resentenced at a later date. *Id.* at 336. The government appealed, and the resentencings were stayed. *Id.* The Second Circuit construed the Rule 35 motions as claims for relief under § 2255 and reversed, holding that a district court's noncompliance with Rule 35 could not form the basis of a collateral attack. *Id.*

The Supreme Court agreed that the proper vehicle for the prisoners' claims was a motion under § 2255, but found that the Court of Appeals lacked jurisdiction over the appeals because they remained interlocutory until the prisoners received the remedy contemplated by the statute, i.e., resentencing. *Id.* at 338-39. In support of its holding, the Court pointed to the "long-established rule against piecemeal appeals in federal cases" and "the standards of finality to which the Court has adhered in habeas corpus proceedings." *Id.* at 340. This rule of finality, the Court stated, "requires that the judgment to be appealable should be final not only as to all the parties, but as to the whole subject-matter and as to all the causes of action involved." *Id.* (quoting *Collins v. Miller*, 252 U.S. 364, 370 (1920)).

In accordance with the rule from *Andrews*, a petitioner such as Burton who has been resentenced under § 2255 must appeal the order that "either enters the result of a resentencing or corrects the prisoner's sentence." *United States v. Hadden*, 475 F.3d 652, 663 (4th Cir. 2007). A district court's order "contemplating, but not accomplishing, the prisoner's resentencing" is not final and appealable under § 2255. *Id.* at 662 (citing *Andrews*, 373 U.S. at 340). Here, as in *Hadden*, the amended criminal judgment is the "final judgment" for purposes of § 2255, as it enters the result of Burton's resentencing.

This remains true even though Burton appeals both his new sentence as well the district court's prior denial of relief under § 2255. Citing *Andrews*, the Fourth Circuit in *Hadden* concluded that an amended criminal judgment that resentenced a prisoner under § 2255 bore "traits of both a § 2255 proceeding and a criminal action" and was thus "a hybrid order that is both part of the petitioner's § 2255 proceeding and part of his criminal case." *Hadden*, 475 F.3d at 664. The Fourth Circuit explained that

> [t]o the extent the [order entering the result of a resentencing] formally completes
> the prisoner's § 2255 proceeding, it is part of that proceeding, and, accordingly, a

> prisoner's appeal of that aspect of the order is an appeal of a § 2255 proceeding . . . . To the extent the order vacates the original sentence and enters a new criminal sentence, by contrast, the order is part of the prisoner's criminal case, and, accordingly, a prisoner's appeal of that aspect of the order is part of the petitioner's criminal case.

*Id.*

Under the reasoning in *Hadden*, Burton's amended judgment setting forth his new sentence completed both his criminal case and his § 2255 proceeding and thus serves as a basis to appeal both the legality of his new sentence as well as the district court's denial of the motions to amend his successive habeas petition, which included the Rule 43 challenge to his convictions. To require Burton to file separate appeals of the amended criminal judgment and the judgment granting in part his habeas petition would contravene § 2255(d)'s requirement that a habeas petitioner appeal from a "final judgment" and would be contrary to the Supreme Court's admonition that courts should avoid "piecemeal appeals" in federal habeas cases. *Andrews*, 373 U.S. at 340.

The Eleventh Circuit reached a similar conclusion in *United States v. Futch*, 518 F.3d 887 (11th Cir. 2008). In that case, the petitioner was resentenced under § 2255 and appealed his amended criminal judgment. *Id.* at 890. The court held that on appeal, petitioner could challenge both his new sentence as well as a district court order entered months earlier which denied his other § 2255 claims challenging his conviction. *Id.* at 894. Relying on *Andrews* and *Hadden*, the court reasoned that the amended criminal judgment "conclude[d] the whole subject matter and all claims as to both the conviction and sentence in [the petitioner's] § 2255 proceedings." *Id.* The petitioner had thus "timely appealed both the new sentence and the district court's [earlier] order in the § 2255 proceedings denying his § 2255 conviction claims." *Id.*

We agree with out sister circuits' application of *Andrews* in *Hadden* and *Futch*. Burton therefore acted properly by appealing the amended criminal judgment rather than the judgment granting in part his motion to vacate.

Although Burton may appeal from the amended judgment, he may not pursue the Rule 43 issue in his appeal until he obtains a certificate of appealability ("COA"). The Government fails to raise the COA issue, but it must be addressed because a petitioner may not appeal a "final order in a proceeding under section 2255" unless a "circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). The issuance of a COA is a "jurisdictional prerequisite" under the statute. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To obtain a COA, the petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see United States v. Hardin*, 481 F.3d 924, 926 n.1 (6th Cir. 2007); *see also* Fed. R. App. P. 22(b)(1); Fed. R. Governing § 2255 Proceedings 11(a).

Adopting the reasoning in *Hadden*, we have held that when a petitioner who is resentenced under § 2255 "seeks to 'challenge *the relief granted*,'" he is in actuality "'appealing a new criminal sentence and therefore need not obtain a COA.'" *Ajan v. United States*, 731 F.3d 629, 631 (6th Cir. 2013) (emphasis in original) (brackets omitted) (quoting *Hadden*, 475 F.3d at 664). Therefore, the court is free to hear Burton's appeal of the legality of his amended sentence without a COA.

In contrast, we have not previously decided the question of whether a petitioner who is resentenced under § 2255 and who appeals the amended judgment needs a COA in order to challenge the district court's decision *not to grant relief* on some of his § 2255 claims. However, the circuits that have considered this issue "have unanimously concluded that a [COA] is needed for the part of the case that challenges the denial of collateral relief." *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (collecting cases); *accord Futch*, 518 F.3d at 894. We agree.

Therefore, to the extent Burton appeals the denial of habeas relief, including his Rule 43 based motions, he is appealing an aspect of his § 2255 proceeding and must obtain a COA. *See Hadden*, 475 F.3d at 664; *Futch*, 518 F.3d at 894.

We have held that an application for a COA must first be considered by the district court. *See Kincade v. Sparkman*, 117 F.3d 949, 953 (6th Cir. 1997); *Wilson v. United States*, 287 F. App'x 490, 494 (6th Cir. 2008); *see also Edwards v. United States*, 114 F.3d 1083, 1084 (11th Cir. 1997); *Lozada v. United States*, 107 F.3d 1011, 1017 (2d Cir. 1997). Where, as here, a petitioner appeals without first applying for a COA from the district court, we customarily remand to the district court with the instruction to evaluate the petitioner's eligibility for a COA. *See, e.g.*, *Hardin*, 481 F.3d at 926; *Castro v. United States*, 310 F.3d 900, 903-04 (6th Cir. 2002); *Kincade*, 117 F.3d at 953.

However, a habeas petitioner's failure to apply for a COA first from the district court, while a "defect in procedure," is not jurisdictional. *United States v. Mitchell*, 216 F.3d 1126, 1130 (D.C. Cir. 2000). Accordingly, we have granted COAs in the first instance when remanding to the district court "would be wasteful of judicial resources." *United States v. Cruz*, 108 F. App'x 346, 348 (6th Cir. 2004); *see also Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir. 2010) (choosing to construe a notice of appeal as an application for a COA "rather than remand to enable petitioner to file an application for a COA").

Granting Burton a COA *sua sponte* is appropriate under the circumstances. The present case is unusual. The parties neither applied for, nor insist upon, a COA. The notice of appeal indicated that appeal was from the sentencing judgment rather than from the § 2255 judgment. Also, the issue to be resolved on appeal has changed entirely since the time of the district court's ruling. Asking the district court to decide whether to issue a COA when we would be inclined to

issue one regardless would be particularly pointless in these unusual circumstances. As the requirements for a COA have been satisfied, we hereby certify Burton's Rule 43 issue for appeal.

## III. Second or Successive Authorization

The Government argues that Burton's Rule 43 motions were second or successive habeas petitions at the time they were filed in the district court. The Government concedes, however, that Burton no longer needs this court's permission to pursue claims attacking the validity of his conviction now that the district court has entered a new judgment resentencing him. "[A] habeas petitioner, after a full resentencing and the new judgment that goes with it, may challenge his undisturbed conviction without triggering the 'second or successive' requirements [of 28 U.S.C. § 2255(h)]." *King v. Morgan*, 807 F.3d 154, 156-57 (6th Cir. 2015).

## IV. Procedural Default

Although the Government argues with considerable force that Burton's Rule 43 claim is procedurally defaulted, we need not resolve that issue. Despite having been aware that the trial court mailed the verdict before announcing it in open court, Burton did not raise this issue on direct appeal. However, we may address the merits of a procedurally defaulted habeas appeal and affirm on grounds other than procedural default. *See El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002); *Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000). Doing so is appropriate in a case such as this one, where the petitioner's claim on appeal—that the district court's delivery of its guilt determination by mail caused prejudice—clearly lacks merit.

Furthermore, we proceed to consider Burton's Rule 43 argument on appeal notwithstanding that it was not reached by the district court. We may affirm on a ground not relied upon by the district court, *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 573 (6th Cir. 2008),

and it is appropriate to do so here, where both parties have asked us to decide the Rule 43 issue and the issue has been fully briefed and argued on the merits.

## V. Rule 43 Argument

Burton's Rule 43 claim that the district court's guilt determination was improperly delivered by mail rather than in open court fails clearly for lack of prejudice. Burton's claim is reviewed for plain error, as he never raised it during the district court's sentencing proceedings. *See* Fed. R. Crim. P. 52(b); *United States v. Ford*, 761 F.3d 641, 655 (6th Cir. 2014). Plain error review is particularly appropriate here, where the court could have easily met the asserted requirement if the requirement had been drawn timely to the court's attention. To meet the plain error standard, Burton must demonstrate that (1) there was legal error (2) that was clear and (3) that affected the appellant's substantial rights and (4) seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Lawrence*, 735 F.3d 385, 401 (6th Cir. 2013). "Meeting all four prongs is difficult, 'as it should be.'" *Id.* (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Even assuming, without deciding, that Burton has established a clear Rule 43 violation, he has not demonstrated that the alleged error affected his substantial rights. The phrase "affects substantial rights" "in most cases means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Ataya*, 884 F.3d 318, 323 (6th Cir. 2018) (internal ellipsis omitted) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

No such prejudice has been shown. Burton does not argue that, but for the alleged error, the outcome of the trial would have been different. Nor does he claim actual innocence. Burton asserts instead that as a result of the court's decision to mail the verdict, he was deprived of the

"opportunity to address the verdict, lodge objections, or preserve issues for direct appeal." This argument fails to account for the fact that Burton could have filed written objections to the verdict upon receiving it in the mail or lodged verbal objections when the verdict was announced at his sentencing.

The only specific example of prejudice Burton points to is the inability to object to the district court's failure to follow the procedural requirements in the Interstate Agreement on Detainers, which we then reviewed for plain error on direct appeal. *See Crozier*, 259 F.3d at 516. But it is not clear why Burton would have made such an objection during the hearing announcing the verdict as opposed to earlier during the substantive portion of the trial. Indeed, we noted on direct appeal that we were reviewing the claim for plain error due to "Burton's failure to object *at trial*." *Id.* (emphasis added). Burton has not established that the error in mailing the verdict affected his ability to make his Interstate Agreement on Detainers objection.

In arguing prejudice, Burton relies heavily on *United States v. Williams*, in which we held that a defendant's appearance at a sentencing hearing via video camera violated Rule 43 and was not harmless error. 641 F.3d 758, 765 (6th Cir. 2011). We observed that "[a]lthough the United States is correct that [the defendant] might have received the exact same sentence if he had been physically present, it has offered nothing to convince us that he certainly would have and, therefore, failed to meet its burden." *Id.*

Burton, however, faced a significantly lower risk of prejudice than did the defendant in *Williams*. The effect, if any, of a defendant's face-to-face interaction with a judge is likely to be much less pronounced in the announcement of factual findings than in the sentencing context, where the judge often has greater discretion and is able to choose from a range of outcomes.

Because Burton has not established that he was prejudiced by the asserted Rule 43 violation, he may not obtain relief under plain error review.

Burton seeks to avoid the issue of prejudice altogether by inviting the court to hold—as the Second Circuit in *United States v. Canady* did—that the Rule 43 violation amounts to "structural error." *See* 126 F.3d 352, 364 (2d Cir. 1997). The asserted Rule 43 violation in this case, however, did not rise to the level of structural error. The error was confined to the delivery of the verdict and did not undermine the outcome of the trial. Nor did it affect the quality or reliability of the evidence presented.

Structural errors "are the exception and not the rule." *Rose v. Clark*, 478 U.S. 570, 578 (1986). "[T]he defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). Unlike trial errors, which may be found harmless, structural errors are "defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." *Fulminante*, 499 U.S. at 309. Accordingly, the Supreme Court has found structural errors "only in 'a very limited class of cases, including: total deprivation of the right to counsel; judicial bias; the unlawful exclusion of grand jurors of defendant's race; denial of the right to self-representation at trial; the denial of the right to a public trial; and erroneous reasonable-doubt instruction to jury.'" *Lawrence*, 735 F.3d at 401 (quoting *Rosencrantz v. Lafler*¸ 568 F.3d 577, 589 (6th Cir. 2009)).

The trial judge's mailing of the verdict in this case does not fit within the narrow category of structural errors outlined by the Supreme Court. Indeed, the Ninth Circuit sitting en banc has held that even where the defendant was absent from the announcement of his death sentence, any constitutional violation that may have occurred was not structural and thus could be "quantitatively

assessed in order to determine whether or not it was harmless." *Rice v. Wood*, 77 F.3d 1138, 1141 (9th Cir. 1996) (en banc) (citing *Rushen v. Spain*, 464 U.S. 114, 119 (1983)). The Ninth Circuit observed that "had [the defendant] been present, he couldn't have pleaded with the jury or spoken to the judge. He had no active role to play; he was there only to hear the jury announce its decision." *Id.* at 1141. The same is true in this case. Neither Burton nor his attorney could have had any impact on the judge's rendition of the verdict aside from their presence.

While the defendant's absence at the announcement of a verdict is not "of little significance," *Canady*, 126 F.3d at 364, that does not mean that is it automatically prejudicial. Consistent with this view, many circuits, including ours, have applied harmless error analysis to claims that the defendant was physically absent during either the return of a verdict or the announcement of a sentence. *See Williams*, 641 F.3d at 765 (announcement of sentence); *Rice*, 77 F.3d at 1142 (collecting cases); *United States v. Hadden*, 112 F. App'x 907, 908 (4th Cir. 2004) (per curiam); *United States v. Faulks*, 201 F.3d 208, 213 (3d Cir. 2000); *United States v. Huntley*, 535 F.2d 1400, 1404 (5th Cir. 1976) (announcement of guilt at bench trial); *but see United States v. Bethea*, 888 F.3d 864, 867 (7th Cir. 2018) (holding that conducting a combined plea and sentencing hearing by videoconference in violation of Rule 43(a) constitutes *per se* error, automatically warranting reversal); *United States v. Torres-Palma*, 290 F.3d 1244, 1248 (10th Cir. 2002) (sentencing).

It is true that the Second Circuit in *Canady* held that announcing a defendant's guilt by mail at the conclusion of a bench trial constitutes structural error. 126 F.3d at 364. In doing so, however, the Second Circuit required not a retrial or even a resentencing, but only the formality of a post-sentencing announcement of the court's finding of guilt in open court. *Id.* The Second Circuit at the same time recognized that "sending this case back for a public pronouncement of the

court's decision may be viewed by some as an unnecessary formality." *Id.* Harmless error analysis in such a case disposes of the need for such a technical formality, which further supports our conclusion that the asserted Rule 43 error in Burton's case does not amount to structural error.

## VI. Procedural Reasonableness of Burton's New Sentence

Despite receiving a new sentence that is more than 200 months below the low-end of the Guidelines range, Burton contends that his sentence is procedurally unreasonable. The district court resentenced Burton to 360 months' imprisonment, consisting of concurrent terms of 60 months for the drug trafficking, robbery, and felon-in-possession offenses, followed by consecutive terms of 60 months and 240 months for the two § 924(c) offenses.

### A. Firearm Enhancement

First, the district court did not abuse its discretion when it chose not to address Burton's objection to the 1999 presentence report's application of a four-point enhancement for use of a firearm. Burton conceded at his resentencing hearing that he was a career offender. As a result of his career-offender status, Burton's base offense level is 34, which is higher than the base offense level with or without the inclusion of the four-point enhancement. Under the Guidelines, "[t]he career offender offense level controls if it is 'greater than the offense level otherwise applicable.'" *United States v. Moody*, 634 F. App'x 531, 536 (6th Cir. 2015) (quoting U.S.S.G. 4B1.1(b)). Therefore, Burton's base offense level as a career offender would govern regardless of whether the district court had ruled on his objection. Accordingly, the district court did not err in declining to address this objection.

### B. Reliance on the 1999 Presentence Report

Burton next argues that the district court failed to verify that he had had an opportunity to reexamine the presentence report prior to the resentencing. Burton did not raise this below and

concedes that plain error review applies. Burton's argument is without merit because there was sufficient evidence from which the district court could conclude that Burton had adequately reviewed the presentence report prior to his resentencing. During a resentencing hearing, the district court "must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." *United States v. Jeross*, 521 F.3d 562, 586 (6th Cir. 2008) (quoting Fed. R. Crim. P. 32(i)(1)(A)). But "[a] trial judge need not expressly ask the defendant if he and his counsel have read and discussed the report." *Id.* (alteration in original) (quoting *United States v. Osborne*, 291 F.3d 908, 910 (6th Cir. 2002)). Rather, the trial court "need only *somehow* determine that defendant and counsel have had an opportunity to read and discuss the [presentence report]." *Id.* (emphasis in original).

The district judge did not ask Burton or his attorney at resentencing whether they had reviewed the presentence report, but the court was not required to do so as long as it could "somehow determine" that Burton had been provided the opportunity to read and discuss the report. *Osborne*, 291 F.3d at 910. The record contains ample evidence on which the district court could rely to conclude that Burton adequately reviewed and discussed the presentence report with his attorney. Burton stated in his initial sentencing in 1999 that he had reviewed the presentence report and found it to be accurate. In addition, Burton's sentencing memorandum filed prior to his resentencing in 2018 frequently refers to the information contained in the presentence report. Further, Burton referred to the presentence report during his allocution at his resentencing. Finally, both parties agreed that Burton's effective Guideline range for resentencing was correct based on the 1999 presentence report. Therefore, the district court did not plainly err in concluding that Burton reviewed the presentence report prior to his resentencing. *See Jeross*, 521 F.3d at 586-87.

In any event, Burton has not suggested how the district court's alleged error prejudiced him and for this reason also he cannot prevail under plain error review.

### C. Consecutive Sentences

Third, Burton argues that the district court erred when it ordered that he serve his federal sentence consecutively to his state sentence imposed for a parole violation. Burton's failure to raise this objection after the court announced its proposed sentence "undermine[d] his right to challenge the adequacy of the court's explanation for the sentence." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). Accordingly, as Burton appears to concede, this objection is subject to plain error review.

Burton contends that at the time of the original sentencing in 1999, the district court did not realize that it had authority to issue a sentence concurrent to the undischarged state sentence. But the district court's mistake, if it was one, is not relevant to this case, because the judge presiding over Burton's resentencing in 2018 expressly recognized the court's discretion to impose concurrent sentences. *See supra* at 4 n.1.

Burton secondly argues that the district court's imposition of consecutive sentences violated the court's own reasoning that sufficiently related cases would be made to run concurrently. During the resentencing hearing, the district court explained that

> This Court has consistently followed the recommendations, the Guidelines concerning when a sentence should be run concurrently, partially concurrent, or consecutive to any other sentences. And the Court, if the case is not related to the instant case, consistently will find that it must be consecutive. If it is sufficiently related, we make it run concurrent.

The Government argued at the resentencing hearing that the federal offense and the state parole violation caused "distinct harms" and the corresponding sentences for each should run consecutively. The district court appeared persuaded, and ultimately ordered that the federal

sentence run consecutively to the sentence imposed for the parole violation because "[the state offenses] are insufficiently related to the instant offense."

The district court's ruling is in line with the relevant statute and Sentencing Guidelines, which provide that a district court has discretion to impose a sentence consecutively to any "undischarged term of imprisonment." 18 U.S.C. § 3584(a); U.S.S.G. § 5G1.3(d); *see United States v. Johnson*, 640 F.3d 195, 208 (6th Cir. 2011). The comment to subsection (d) of the Guideline further notes that where, as here, the undischarged sentence results from a state parole violation, "the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation." U.S.S.G. § 5G1.3, cmt. n. 4(C).

It does not matter—as Burton contends—that his state parole violation and federal offenses stemmed from the same course of conduct. The Guideline policy contained in U.S.S.G. § 5G1.3, cmt. n. 4(C) recommends consecutive sentences for a federal offense and state parole violation notwithstanding that they both arise from the same conduct. The policy states that it is "[c]onsistent with the policy set forth in" U.S.S.G. § 7B1.3(f), which in turn requires any sentence imposed for a federal supervised release or probation violation to be served consecutively to any other term of imprisonment, "whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release." This policy makes sense given that penalties for revocation of state parole are considered "part of the sentence for the original crime of conviction, even where the facts underlying the revocation are precisely the same as those providing the basis for conviction in the instant [federal] case." *United States v. Wheeler*, 330 F.3d 407, 412 (6th Cir. 2003) (citing *Johnson v. United States*, 529 U.S. 693, 701 (2000)). Accordingly, although Burton's federal offenses formed the basis for his state parole

violation, the district court rightly concluded that his state and federal sentences address distinct harms.

The district court's explanation of Burton's new sentence is more than sufficient under our caselaw. In *Johnson*, we held that the district court need not even provide a "specific reason" for a consecutive sentence, so long as it "makes *generally clear* the rationale under which it has imposed the consecutive sentence." 640 F.3d at 208-09 (emphasis in original) (quoting *United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998)). Here, the district court provided a specific reason for its decision—that the state and federal offenses were "insufficiently related." The court also conducted an analysis under 18 U.S.C. § 3553(a), which it used to justify both the overall length of Burton's sentence as well as the imposition of consecutive state and federal sentences. We have held that a district court's discussion of the § 3553(a) factors in relation to the aggregate length of a defendant's sentence may be "'intertwined' with the determination that the terms of imprisonment should run consecutively." *United States v. King*, 914 F.3d 1021, 1026 (6th Cir. 2019) (internal punctuation omitted) (quoting *Johnson*, 640 F.3d at 208).

Because the district court properly exercised its discretion to impose consecutive sentences for Burton's state and federal offenses, it did not abuse its discretion, let alone commit plain error.

### VII. Substantive Reasonableness of Burton's New Sentence

Burton also challenges the substantive reasonableness of his sentence. He argues that the district court erred by imposing consecutive sentences of 60 months and 240 months under 18 U.S.C. § 924(c), which provides that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, *shall*" be subject to additional and consecutive imprisonment. (emphasis added).

First, Burton waived his substantive reasonableness challenge when he conceded multiple times in the district court proceedings that his § 924(c) sentences should be imposed consecutively. "Waived claims—i.e., those claims intentionally relinquished by a defendant—are not reviewable." *United States v. Toney*, 591 F. App'x 327, 329 (6th Cir. 2014) (citing *United States v. Ward*, 506 F.3d 468, 477 (6th Cir. 2007)).

In his memorandum filed prior to the resentencing, Burton asserted that his Guideline range "is still 262 to 327 months incarceration, plus 300 months mandatory consecutive incarceration for § 924(c) violations." Later in the memo, he stated that "[t]he only portion of Mr. Burton's sentence that is still mandatory is the consecutive 300 months incarceration for his convictions under 18 U.S.C. § 924(c) (Counts 3 and 9)." Furthermore, during his resentencing, Burton's attorney asked Judge Jordan "to impose a sentence that would however it is constructed effectuate having the mandatory consecutive 300 months for the [§] 924(c) charges to start June 13, 2008."[3] Finally, when asked by the district court whether the net effective Guideline range was 562 to 627 months, which included sentences for consecutive § 924(c) convictions, Burton's attorney responded, "That is correct, Your Honor." Burton does not address the waiver issue in his reply brief, even though the Government presented it. Accordingly, Burton's claim is not preserved for appellate review.

Waiver aside, Burton's argument fails on the merits. Burton claims the district court's imposition of consecutive sentences under § 924(c) resulted from "one firearm [that] was used to simultaneously further two different criminal acts," in violation of the rule in *United States v. Vichitvongsa*, 819 F.3d 260, 269 (6th Cir. 2016). In *Vichitvongsa*, the defendant robbed a house

---

[3] Burton during his allocution contradicted his attorney and argued briefly that there was insufficient evidence to convict him on the second § 924(c) violation alleged in Count 9. However, this brief statement during allocution hardly negates his attorney's numerous statements to the court conceding that Burton should be given two consecutive § 924(c) sentences.

in order to steal drugs. *Id.* at 265. He was convicted of two § 924(c) violations: one for brandishing/discharging a firearm during a conspiracy to commit Hobbs Act robbery and another for brandishing/discharging a firearm while drug trafficking. *Id.* We reversed, holding that the defendant could not be convicted of two § 924(c) violations when he used a firearm only once to commit two simultaneous conspiracies. We contrasted the facts in that case with those in *United States v. Burnette*, 170 F.3d 567, 572 (6th Cir. 1999) and *United States v. Graham*, 275 F.3d 490, 519-20 (2001), where the predicate offenses involved distinct events that occurred over a significant period of time. *Vichitvongsa*, 819 F.3d at 267-68.

Unlike in *Vichitvongsa*, and similar to *Graham* and *Burnette*, Burton's consecutive § 924(c) convictions are linked to distinct events that occurred at separate times. The record indicates that Burton used a gun to rob a pharmacy on November 26, 1995 and then carried a firearm during the transport and sale of drugs, which occurred in the hours and days after the robbery. Although the § 924(c) issue was not raised on Burton's direct appeal, we took note of Burton's § 924(c) offense as it related to the later incidents of drug distribution:

> In late November or early December 1995, in Lexington, Kentucky, Clayton Hobbs arranged for Burton to sell some drugs to Christopher Tucker. Hobbs drove Burton and an unidentified third man in a small car to Tucker's shop where Burton sold Tucker two boxes of pharmaceutical drugs. Tucker gave Burton $1,800 in one-hundred dollar bills. Tucker was unable to identify Crozier as the third man.

*United States v. Crozier*, 259 F.3d at 508. The presentence report expressly states that Burton carried a gun during this drug transaction:

> Chris Tucker . . . testified at trial. . . . He received a call from Albert Clayton Hobbs, known as Clayton, who is a friend of Burton's. Tucker arranged to meet Clayton and Burton at Tucker's shop to buy drugs. Tucker said Clayton was driving. *Burton was in the front passenger seat with a gun on the dashboard in front of him*, and another man was in the back seat. Clayton got a box from the trunk of the car and brought it inside to show Tucker. The box contained Lortab, Xanax, and

> codeine or some kind of cough medicine. Tucker gave Clayton $1,800, and still
> owed him another $1,000.

(emphasis added).

As Burton's case does not fall within one of the "limited circumstances" described in *Vichitvongsa*, 819 F.3d at 266, the district court was required to impose consecutive sentences for each of Burton's § 924(c) violations.

Second, Burton argues in the alternative that his consecutive § 924(c) sentences are no longer valid because they are subject to the amendment to § 924(c) made by the recently-enacted First Step Act. Unfortunately for Burton, the First Step Act became law after he was sentenced and thus does not apply to his case. Prior to the enactment of the First Step Act, 18 U.S.C. § 924(c)(1)(C) provided that

> (C) In the case of a second or subsequent conviction under this subsection, the
> person shall—
>    (i) be sentenced to a term of imprisonment of not less than 25 years.

Section 403(a) of the Act amends the statute to eliminate the 25-year mandatory minimum in § 924(c)(1)(C) unless the defendant had a prior § 924(c) conviction that became final before he committed his second § 924(c) violation. Pub. L. No. 115-391, 132 Stat. 5194, § 403(a). Accordingly, § 924(c) now reads as follows:

> (C) In the case of a *violation of this subsection that occurs after a prior conviction*
> *under this subsection has become final*, the person shall—
>    (i) be sentenced to a term of imprisonment of not less than 25 years.

18 U.S.C. § 924(c)(1)(C) (emphasis added).

This change is applicable to "pending cases," that is, "any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." Pub. L. No. 115-391, § 403(b), 132 Stat. 5194, 5222 (2018). Burton was

sentenced in July 2018, more than five months before the enactment of the First Step Act on December 21, 2018.

Burton contends that his sentence has not yet been "imposed" since it remains pending on direct appeal. Our precedent is to the contrary. In *United States v. Richardson*, we held that a sentence is "imposed" for purposes of § 403 of the First Step Act when it is announced by the district court, not when it becomes final on appeal. Nos. 17-2157, 17-2183, __ F.3d __, 2020 WL 413491, at *11-12 (6th Cir. Jan. 27, 2020). In so holding, we acknowledged that *Clark v. United States*, 110 F.3d 15 (6th Cir. 1997)—upon which Burton relies—provides some support for Burton's reading of the word "imposed." *Id.* at *13. We were asked in *Clark* "whether § 3553(f) of the safety valve statute should be applied to cases pending on appeal when it was enacted." 110 F.3d at 17. The safety valve statute stated that it applied "to all sentences imposed on or after" the date of enactment. Pub. L. No. 103-322, § 8001(a), 108 Stat. 1796, 1985-86 (1994). We concluded that the "initial sentence has not been finally 'imposed' within the meaning of the safety valve statute because it is the function of the appellate court to make it final after review or see that the sentence is changed if in error." *Clark*, 110 F.3d at 17.

However, we determined in *Richardson* that *Clark* focused primarily on the remedial purpose of the 1994-safety-valve provision and therefore did not control the interpretation of the First Step Act. *Richardson*, 2020 WL 413491, at *14. We also questioned *Clark*'s continued viability in light of Supreme Court cases holding that a district court's sentence constitutes a final judgment. *Id.* (citing *Betterman v. Montana*, 136 S. Ct. 1609, 1613 (2016) and *Flanagan v. United States*, 465 U.S. 259, 263 (1984)). In sum, a defendant such as Burton who was sentenced before the enactment of the First Step Act but whose appeal remains pending after the law went into effect is not entitled to relief under § 403. *Id.* at *12.

The court in *Richardson* also rejected Burton's second argument: that § 403 of the First Step Act merely clarifies existing law and therefore applies retroactively. *Id.* at *9-11. Burton, as did the defendant in *Richardson*, supports his argument by pointing to § 403's title, which reads "Clarification of Section 924(c) of Title 18, United States Code." Yet, "a statute's title may not undo that which the statute itself makes plain." *United States v. Waters*, 158 F.3d 933, 938 (6th Cir. 1998). As we observed in *Richardson*, if Congress intended to make § 403 merely a clarifying amendment, it would not have included the language in § 403(b) pertaining to retroactivity. 2020 WL 413491, at *11. Furthermore, "even if Congress had intended to simply clarify § 924(c), we must still apply the plain language of section 403(b)," *id.* at *11 n.1, which, as discussed above, makes the § 924(c) amendment inapplicable to defendants like Burton who were sentenced prior to the enactment of the First Step Act. Accordingly, Burton is not eligible for relief under the First Step Act.

## VIII.

The judgment of the district court is affirmed.